[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 7, 2006
THOMAS K. KAHN
CLERK

No. 05-11575
Non-Argument Calendar

_____

D. C. Docket No. 04-00095-CR-T-23-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELIZABETH POWELL GATLIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 7, 2006)**

Before ANDERSON, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Elizabeth Powell Gatlin appeals her convictions and sentences for three

counts of distribution of methamphetamine ("meth"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); possession with intent to distribute 50 grams or more of meth, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii); using and carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

First, Gatlin challenges that there was insufficient evidence to support her conviction for possession with intent to distribute meth. Gatlin argues that the government failed to prove that she intended to distribute the 50 grams of meth in her possession on the date of her arrest. Gatlin argues that the meth found in her purse was for her personal use, which was consistent with both Detective James Pruitt's testimony, as well as the testimony of Gatlin herself. Gatlin argues that the jury was left to speculate as to whether she intended to sell the meth in her purse. Gatlin further argues that there was no evidence supporting the jury's specific finding that this count of conviction involved 56 grams of meth.

Second, Gatlin challenges that there was insufficient evidence to support her conviction for using and carrying a firearm during and in relation to a drug trafficking crime. Gatlin argues that her possession of a firearm was accidental or coincidental to the commission of the drug felony. Gatlin contends that Detective

2

Pruitt's testimony demonstrates that she had the gun for protection because she had been robbed the morning of the date of her arrest.

Third, Gatlin challenges that 18 U.S.C. § 924(c) and 18 U.S.C. § 922(g) are both facially unconstitutional under the Commerce Clause and unconstitutional as applied to her. Gatlin argues that § 922 exceeds Congress's power under the Commerce Clause because the statute requires that the gun affect commerce, but does not specify that it must affect interstate or foreign commerce. Gatlin also argues that the statute is unconstitutional because it does not require that the possession of a firearm "substantially" affect commerce. Gatlin acknowledges that her argument has previously been rejected by this Court. Gatlin also argues that the offense under § 924(c) of possessing or using a firearm in the commission of another federal crime has no inherent relationship to interstate commerce and notes that § 924(c) contains no explicit jurisdictional element that limits its application to interstate commerce. Gatlin further challenges that § 924(c) is unconstitutional as applied to her because the government offered no evidence showing that her conduct affected interstate commerce or had a substantial effect on commerce. Gatlin argues that the fact that the firearm was manufactured in another state has no bearing on the overall regulation of firearms or the sale of firearms.

Fourth, Gatlin challenges that the enhancement of the mandatory minimum

3

sentence for possession with intent to distribute meth based on prior convictions not alleged in the indictment or found by the jury violated her Fifth and Sixth Amendment rights. Gatlin also argues that she should be sentenced under the mandatory guidelines because her offense was committed and indictment was issued prior to United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005). Gatlin also challenges that the enhancement of a statutory minimum based on judicial fact findings should be subject to the same constitutional mandates as those which raise the maximum sentence. Gatlin concedes, however, that all of these arguments are foreclosed by precedent.

Finally, Gatlin challenges that the enhancement to the mandatory minimum penalty for the conviction for using and carrying a firearm during and in relation to a drug trafficking crime based on the firearm being discharged is unconstitutional. Gatlin argues that the question of whether the firearm was discharged should be part of the offense and charged in the indictment because it elevates the minimum sentence. Gatlin concedes, however, that this argument is foreclosed by Supreme Court precedent.

## I.

We generally review "the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable

4

inferences in favor of the jury's verdict." United States v. Castro, 89 F.3d 1443, 1450 (11th Cir. 1996). Determinations of the credibility of witnesses fall within the exclusive province of the jury and may not be revisited unless the testimony is "incredible as a matter of law." United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997). In order to be incredible as a matter of law, the testimony "must be unbelievable on its face." Id.

In order to convict Gatlin of possession with the intent to distribute methamphetamine, the government had to establish three elements: (1) knowledge; (2) possession; and (3) intent to distribute. United States v. Gamboa,166 F.3d 1327, 1331 (11th Cir. 1999). The intent to distribute may be inferred from the amount of drugs involved. United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005), cert. denied, 126 S.Ct. 1635 (2006).

Viewing the evidence in the light most favorable to the government and making all reasonable inferences in favor of the jury's verdict, the evidence is sufficient to support the jury's finding that Gatlin had the intent to distribute meth. Detective Pruitt testified that in his experience that meth users typically only buy smaller amounts of meth such as one-sixteenth or one-eighth an ounce, and rarely buy as much as a half-ounce. Based on this testimony, the jury may have disbelieved Gatlin's testimony that she used between one-quarter and one-half an

5

ounce, and concluded that the two ounces of meth in her purse was more than an amount for personal use. The jury may have also inferred Gatlin's intent to sell the meth in her purse from her admission that she sold meth and the fact that she sold drugs to Detective Pruitt multiple times. Also, the jury may have inferred Gatlin's intent to sell the meth in her purse based on her own testimony that she was unemployed and supported her own habit by selling meth.

The fact that Gatlin had the opportunity to sell two more ounces of meth to Detective Pruitt on the date of her arrest and refused supports her testimony that the meth in her purse was for her own personal use. The jury, however, may have concluded that Gatlin was saving that meth for another customer, as Detective Pruitt testified. The jury also may have inferred Gatlin's intent to distribute from her testimony that she intended to smoke the meth in her purse, but "[i]f [she] needed a little bit of cash, [she] was going to get rid of a little bit of it." The jury may have also disbelieved Gatlin's testimony and used her testimony as evidence of her guilt. See United States v. Williams, 390 F.3d 1319, 1326 (11th Cir. 2004) ("Where some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in her own defense, the Defendant's testimony, denying guilt, may establish, by itself, elements of the offense").[1] Although

---

[1] Gatlin does not argue that her testimony should be disregarded for sufficiency purposes, c.f. Williams, 390 F.3d at 1325 (Corrigan, J., concurring), and in fact relies on her testimony as well.

Gatlin's argument would provide a reasonable basis for an acquittal on this count, there was sufficient evidence to support a reasonable inference to the contrary that Gatlin did intend to distribute the meth. Therefore, the conviction on this count was supported by sufficient evidence.

Finally, it is unclear how the jury specifically found that Gatlin possessed 56 grams of meth with the intent to distribute it. It is possible that the jury confused the amount of meth in Gatlin's purse with Detective David Wallace's testimony that he discovered 55.9 grams of marijuana in Gatlin's bedroom. The evidence, however, does support a finding that Gatlin possessed 66 grams of meth in her purse. The jury may have found that Gatlin only intended to sell 56 grams of the meth and to keep the other 10 grams. Because the evidence in the record actually supports a finding of a greater amount of meth, and the difference between 56 grams and 66 grams of meth would not affect Gatlin's sentence, the jury's specific finding is supported by sufficient evidence.

## II.

Pursuant to 18 U.S.C. § 924(c)(1)(A), it is illegal for "any person who, during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, [to] use[] or carr[y] a firearm . . . ." 18 U.S.C. § 924(c)(1)(A). To sustain a conviction under this statute, the

7

government must have sufficient evidence on both the "uses or carries" prong and the "during and in relation to" prong. United States v. Timmons, 283 F.3d 1246, 1250 (11th Cir. 2002). The phrase "in relation to" means that, at a minimum, "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." Smith v. United States, 508 U.S. 223, 238, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993). The firearm at least must facilitate, or have the potential of facilitating the drug trafficking offense. Id.

The evidence here was sufficient for the jury to find that Gatlin used or carried a firearm during and in relation to a drug trafficking offense. Detective Pruitt testified that most of the drug transactions with Gatlin occurred in her bedroom, and Gatlin testified that she usually sold meth from her bedroom. The evidence also reflected that Gatlin placed the gun under the pillow on her bed. The evidence further reflected that Gatlin fired the gun twice in her bedroom as officers entered her home. The storing and firing of the gun supports a jury inference that she was "using" or "carrying" the gun. Furthermore, the fact that she had the gun stored in the place where she generally sold meth supports the jury's inference that she possessed the gun during and in relation to the crime of possessing meth with the intent to distribute it. The jury may have inferred that she started firing the gun

8

when the police came to search her home because she thought someone was coming to steal her drugs. Although Gatlin claims that she had the gun because she feared that people were coming to attack her, the jury may have disbelieved her testimony and used it as substantive evidence of her guilt, along with the government's evidence. Therefore, the jury's finding that Gatlin used or carried a firearm during and in relation to a drug trafficking offense is supported by substantial evidence.

**III.**

We review de novo Gatlin's preserved challenge to § 922(g) under the Commerce Clause. United States v. Dunn, 345 F.3d 1285, 1288 (11th Cir. 2003). We review Gatlin's challenge under the Commerce Clause to § 924(c) for plain error because it is raised for the first time on appeal. United States v. Peters, 403 F.3d 1263, 1270 (11th Cir. 2005). To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights. United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). If all three conditions are met, we may only reverse if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotations omitted).

We have repeatedly upheld the constitutionality of § 922(g). United States

v. Wright, 392 F.3d 1269, 1280 (11th Cir. 2004), cert. denied,125 S.Ct. 1751 (2005); United States v. Dunn, 345 F.3d at 1297; United States v. Scott, 263 F.3d 1270 (11th Cir.2001); United States v. Dupree, 258 F.3d 1258 (11th Cir.2001); United States v. Nichols, 124 F.3d 1265, 1266 (11th Cir. 1997); McAllister, 77 F.3d at 390. In Nichols, we rejected an identical constitutional challenge to § 922(g) because the term "commerce" is not defined as "interstate or foreign commerce." Nichols, 124 F.3d at 1266. Thus, we similarly reject Gatlin's facial challenge to the constitutionality of § 922(g).

We have also upheld the constitutionality of § 924(c) against Commerce Clause challenges. United States v. Ferreira, 275 F.3d 1020, 1028 (11th Cir. 2001); United States v. DePace, 120 F.3d 233, 235 n. 2 (11th Cir. 1997). We similarly deny Gatlin's challenge here.

Finally, Gatlin argues that § 924(c) is unconstitutional as applied to her. Section 924(c) only requires that the government prove some "minimal nexus" to interstate commerce. Scott, 263 F.3d at 1274. Agent Michael Gistinger testified that the frame or receiver of Gatlin's firearm was manufactured in California and crossed state lines to get into Florida. Under federal law, the definition of a firearm includes the frame or receiver. 18 U.S.C. § 921(a)(3)(C). Agent Gistinger's testimony that the frame or receiver was manufactured in California

and crossed state lines into Florida is sufficient to establish the minimal nexus to interstate commerce.  Therefore, we reject Gatlin's challenge that § 924(c) is unconstitutional as applied to her.

## IV.

We review de novo constitutional challenges to a sentence.  United States v. Cantellano, 430 F.3d 1142, 1144 (11th Cir. 2005), cert. denied, 126 S.Ct. 1604 (2006).

In Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Supreme Court held that the government need not allege in its indictment, and need not prove beyond a reasonable doubt, that a defendant had prior convictions in order for a district court to use those convictions to enhance a sentence.  Id. at 247, 118 S.Ct. at 1233.  We have clarified that the Supreme Court's decision in Almendarez-Torres was left undisturbed by Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and Booker. United States v. Shelton, 400 F.3d 1325, 1329 (11th Cir. 2005).  Moreover, we have noted that while recent decisions may arguably cast doubt on the future prospects of Almendarez-Torres, the Supreme Court has not explicitly overruled

11

Almendarez-Torres, and, as a result, we must follow it.  United States v. Camacho-Ibarquen, 410 F.3d 1307, 1316 n.3 (11th Cir.), cert. denied, 126 S.Ct. 457 (2005).  Thus, we reject Gatlin's argument that the district court violated her Fifth Amendment and Sixth Amendment rights by enhancing her sentence based on prior convictions that were not charged in the indictment or proven to the jury beyond a reasonable doubt, particularly where, as here, the fact of those convictions was not challenged and, thus, was admitted.  See Shelton, 400 F.3d at 1330.

We have also rejected the idea that a court may splice Booker's Sixth Amendment holding from the remedial holding and apply only part of Booker retroactively.  United States v. Duncan, 400 F.3d 1297, 1303-04 (11th Cir.), cert. denied, 126 S.Ct. 432 (2005).  Furthermore, we rejected the argument that the application of the Booker remedial holding would violate due process or the Ex Post Facto Clause because it would effectively increase the sentence authorized by the jury verdict from the guideline range to the statutory maximum.  Id. at 1307-08.  As she concedes, Gatlin's argument is controlled by Duncan, and we therefore reject it.

Finally, the Supreme Court has distinguished facts that raise a defendant's maximum sentence from those raising a defendant's minimum sentence and held

12

that facts increasing a minimum sentence are not subject to the constitutional restrictions in the <u>Apprendi</u> line of cases. <u>Harris v. United States</u>, 536 U.S. 545, 557, 122 S.Ct. 2406, 2414, 153 L.Ed.2d 524 (2002). Thus, we deny Gatlin's constitutional challenge to the enhancement of the statutory minimum sentence based on prior convictions.

**V.**

We review <u>de novo</u> constitutional challenges to a sentence. <u>Cantellano</u>, 430 F.3d at 1144.

Pursuant to 18 U.S.C. § 924(c)(1)(A):

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . .

(i) be sentenced to a term of imprisonment of not less than 5 years;

. . .

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A).

The Supreme Court has held that § 924(c)(1)(A) defines a single offense and regards discharging a firearm as a sentencing factor to be found by the judge, not

an offense element to be found by the jury.  <u>Harris</u>, 53 U.S. at 556, 122 S.Ct. at 2414.  Furthermore, as noted above, the Supreme Court also held in <u>Harris</u> that facts increasing a minimum sentence are not subject to the constitutional restrictions in the <u>Apprendi</u> line of cases.  <u>Id.</u> at 557, 122 S.Ct. at 2414.  Thus, we reject Gatlin's argument that the 120-month mandatory minimum sentence for using and carrying a firearm during and in relation to a drug trafficking crime is unconstitutional because it was based on facts not alleged in the indictment or found by the jury.

The judgment of the district court is

**AFFIRMED.**